# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Robert E. Blackburn

Civil Action No. 18-cv-00917-REB

ANDREA D. GARCIA,

    Plaintiff,

v.

ANDREW M. SAUL,[1] Commissioner of Social Security,

    Defendant.

## ORDER AFFIRMING COMMISSIONER

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#1],[2] filed April 19, 2018, seeking review of the Commissioner's decision denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges she is disabled as a result of a host of physical impairments, but

---

[1] On June 4, 2019, the Senate confirmed Andrew M. Saul as Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Nancy A. Berryhill, former Acting Commissioner of Social Security, as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

also, more relevantly for present purposes, anxiety and an affective disorder.  After her applications for disability insurance benefits and supplemental security income benefits were denied, plaintiff requested a hearing before an administrative law judge.  This hearing was held on March 15, 2017.[3]  At the time of the hearing, plaintiff was 43 years old.  She has an associates degree and past relevant work experience as a bookkeeper, customer service representative, and telemarketer.  She has not engaged in substantial gainful activity since October 20, 2012, her alleged date of onset.[4]

      The ALJ found plaintiff was not disabled and therefore not entitled to disability insurance benefits or supplemental security income benefits.  Although the medical evidence established plaintiff suffered from severe physical and mental impairments, the judge found the severity of those impairments did not meet or equal any impairment listed in the social security regulations.  The ALJ determined plaintiff had the residual functional capacity to perform a range of sedentary work with postural, environmental, and nonexertional impairments.  Although this finding precluded plaintiff's past relevant work, the ALJ found there were other jobs existing in substantial numbers in the national and local economies she could perform.  He therefore found her not disabled at step five of the sequential evaluation.  Plaintiff appealed this decision to the Appeals Council.  The Council affirmed.  Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

---

[3] Plaintiff originally appeared for a hearing on October 26, 2016.  At the ALJ's suggestion, the hearing was postponed to allow her to retain an attorney.  (*See* Tr. 64-71.)

[4] Plaintiff's date last insured was December 31, 2012.  (*See* Tr. 16.)  She therefore was required to prove disability on or before that date.  *See* 20 C.F.R. § 404.131(b); ***Ivy v. Sullivan***, 898 F.2d 1045, 1048 (5th Cir.1990); ***Charafeddine v. Astrue***, 2013 WL 1232205 at *3 (D. Colo. March 27, 2013).

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform her past work despite any limitations.

3

> 5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(a)(4)(I)-(v).[5] *See also Williams v. Bowen* 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. *Hedstrom v. Sullivan*, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is

---

[5] Throughout this opinion, I cite to relevant sections of Part 404 of Title 20 of the Code of Federal Regulations, which contain the Commissioner's regulations relating to disability insurance benefits. Identical, parallel regulations can be found in Part 416 of that same title, relating to supplemental security income benefits.

4

overwhelmed by other evidence in the record or constitutes mere conclusion." ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner.  ***Id.***

### III.  LEGAL ANALYSIS

In this appeal, plaintiff does not challenge the ALJ's assessment of her physical limitations or physical residual functional capacity.  Instead, she cabins her complaints to the ALJ's purported failure to include in her residual functional capacity limitations on her ability to interact with coworkers and supervisors.  She also suggests the ALJ erred in assessing whether the alternative jobs he identified existed in sufficiently substantial numbers to satisfy the Commissioner's burden at step five of the sequential evaluation. Finding no reversible error in these determinations, I affirm.

As part of his lengthy and detailed discussion of plaintiff's substantial medical history, the ALJ determined, *inter alia*, that plaintiff's residual functional capacity was limited to jobs which required only occasional dealing with the general public.  (Tr. 26.) However, he rejected the opinions of both a state agency psychological examiner, Dr. Mark Suyeishi, and a consultative psychological examiner, Dr. Frederick Malmstrom, that plaintiff would be further limited in her abilities to interact with supervisors and coworkers.  (***See*** Tr. 90 (opinion of Dr. Suyeishi that plaintiff could not "work closely with supervisors or coworkers" but could "accept supervision and relate to coworkers if contact is not frequent or prolonged"); 339 (opinion of Dr. Malmstrom that plaintiff "is not

5

capable of cooperating with coworkers but can cooperate with supervisors").) Plaintiff claims the reasons given the by the ALJ for these decisions do not bear scrutiny.

The ALJ's opinion in this case is a model of a thorough and thoughtful review of the extensive medical evidence and myriad medical source opinions pertaining to plaintiff's numerous impairments. Yet even assuming *arguendo* the reasons he gave for discounting these aspects of Dr. Suyeishi's and Dr. Malmstrom's opinions were insufficient, any such error would be ultimately harmless in this case. For even if these limitations were incorporated into plaintiff's residual functional capacity, two of the three jobs identified by the ALJ at step five of the sequential evaluation would remain viable alternatives.

The ALJ essentially limited plaintiff to unskilled work. (*See* Tr. 26.) In general, "the primary work functions in the bulk of unskilled [sedentary] work relate to working with things (rather than with data or people)." 20 C.F.R. § Pt. 404, Subpt. P, App. 2, § 201.00(i). More specifically with respect to two of the three alternative jobs the ALJ found to be within plaintiff's residual functional capacity – document specialist and lens-block gauger – interacting with supervisors and coworkers is not a significant job function.

As categorized in the *Dictionary of Occupational Titles*, jobs are designated, *inter alia*, according to the worker's relationships to data, people, and things. "The identifications attached to these relationships are referred to as Worker Functions, and provide standard terminology for use in summarizing how a worker functions on the job." *See* United States Department of Labor, *Dictionary of Occupational Titles*

[hereinafter "*DOT*"], App. B, 1991 WL 688701 (4th ed. rev'd 1991). "The worker function label 'People' expresses the degree of interaction with other people that the job requires." **Hackett v. Barnhart**, 395 F.3d 1168, 1175 (10th Cir. 2005). "The DOT rates the amount of interaction with people on a scale of 0-8, with 8 representing the lowest possible level of human interaction that exists in the labor force." **Lane v. Colvin**, 643 Fed. Appx. 766, 770 n.1 (10th Cir. March 29, 2016).

Both the document specialist and lens-block gauger jobs have a "people rating" of 8, meaning the level of personal interaction associated with those jobs requires only the ability to "attend[] to the work assignment instructions or orders of [a] supervisor. (No immediate response required unless clarification of instructions or orders is needed.)." *DOT*, App. B, 1991 WL 688701. Moreover, the *DOT* descriptions of both jobs confirm that interactions with other people are extremely limited. **See** *DOT* Job No. 249.587-018, 1991 WL 672349 (interactions with people "Not Significant" requirement of document preparer job; "Activity or Condition" of "Talking" "does not exist"); *DOT* Job No. 716.687-030, 1991 WL 679466 (same with respect to lens-block gauger job). **See also Sigala v. Berryhill**, 2019 WL 719512 at *4 (D.N.M. Feb. 20, 2019) (noting "the Court must analyze the DOT descriptions . . . to determine the amount of interaction with people they require, regardless of their people ratings").

Thus, if any error were attributable to the ALJ's decision not to include a limitation on interactions with supervisors and coworkers, it undoubtedly was harmless. **See Williams v. Chater**, 1995 WL 490280 at *2 (10th Cir. Aug.16, 1995) ("Procedural imperfection that does not affect a party's substantive rights is not a basis for reversal.");

7

*Lumpkin v. Colvin*, 112 F.Supp.3d 1169, 1174 (D. Colo. 2015) ("[W]here [the] ALJ's opinion is otherwise amply supported by the record, error which does not prejudice [the] claimant will not warrant remand."). Remand is not warranted on this basis.

I am equally unpersuaded by plaintiff's argument that the ALJ's conclusion that these alternative jobs existed in sufficiently significant numbers to satisfy the Commissioner's burden as step five. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.966(a)-(b). *See also Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). Contrary to plaintiff's implicit assumption, this determination is not limited to the number of jobs existing in the local economy. "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where [the claimant] lives or in several regions of the country," "regardless of whether such work exists in the immediate area in which [the claimant] lives." 42 U.S.C. § 423(d)(2)(A). *See also Botello v. Astrue*, 376 Fed. Appx. 847, 850-51 (10th Cir. April 26, 2010); *Ghini v. Colvin*, 82 F.Supp.3d 1224, 1234 (D. Colo. 2015).

Even considering only the two jobs identified above, they comprise some 24,000 jobs nationally. *See Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. Apr. 18, 2008) (aggregating total numbers of all jobs identified by vocational expert). That figure undoubtedly is more than sufficient to meet the Commissioner's burden, and plaintiff does not specifically argue otherwise.[6] *See Botello*, 376 Fed. Appx. at 851. I therefore

---

[6] Instead, plaintiff complains of the ALJ's failure to explain why he found these numbers significant. Plaintiff has identified no authority which requires the ALJ to give the detailed, factor-by-factor explanation she suggests is necessary, except in the circumstances not relevant here. *See Raymond v. Astrue*, 621 F.3d 1269, 1274 n.2 (10th Cir. 2009) ("*Trimiar* does not hold that . . . a court must engage in a factoral analysis when the number of jobs . . . available is . . . much larger" than the 650 to 900 jobs identified in *Trimiar*); *Murray v. Berryhill*, 2018 WL 2159788 at *4 (D. Kan. May 10, 2018).

find no reversible error in this regard either.

## IV.  ORDERS

For these reasons, I affirm the ALJ's disability determination.

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is affirmed.

Dated August 13, 2019, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge